OPINION
The City of Dayton ("the city") appeals from a judgment of the Montgomery County Court of Common Pleas, which granted a motion for summary judgment filed by the Fraternal Order of Police, Captain John C. Post Lodge No. 44 ("the FOP") and denied the city's motion for summary judgment. The motions for summary judgment related to the validity of an arbitrator's award ordering that Police Officer Michael McDonald be reinstated to the police force.
The relevant facts and procedural history are as follows.
On February 17, 1998, McDonald, while on duty, went through the drive-thru of a Wendy's Restaurant on North Keowee Street to order some food. Brandi Martin, a seventeen year old, was working in the drive-thru. While paying for his order, McDonald received change as if he had given Martin a $10 bill, but he steadfastly maintained that he had given her a $20 bill and that he had been shortchanged. When Martin insisted that she had not shortchanged McDonald, the assistant manager was called and checked Martin's cash register drawer. Martin apparently acted disrespectfully and made derogatory comments about the police to McDonald or within his earshot throughout this encounter.
The assistant manager balanced Martin's register against the receipts for the day and informed McDonald through the drive-thru window that there were no $20 bills in Martin's drawer. McDonald, who was still unsatisfied and apparently wanted Martin and the area around her work station to be searched, then parked his cruiser and entered the store. Seeing no one at the front counter, McDonald entered the kitchen and found Martin at the drive-thru window. When Martin continued to act uncooperatively and disrespectfully and refused to accompany McDonald to his cruiser to be issued a summons, McDonald used pepper spray on her. McDonald then took Martin to his cruiser and called his supervisor. As a result of these events, four misdemeanor criminal charges were filed against McDonald. Three of the charges were later dismissed, and McDonald was acquitted on the fourth charge. Following an internal affairs investigation, departmental charges were served on McDonald on July 14, 1998. A hearing was held on these charges on July 21, 1998. The city found that McDonald had violated the Canons of Police Ethics and Rules of Conduct for Sworn Personnel by acting and speaking inappropriately in confronting Martin regarding the alleged theft, in using unnecessary force against Martin, and in improperly arresting a juvenile. As a result of these findings, McDonald was terminated effective July 24, 1998.
McDonald filed a grievance claiming that he had been discharged without just cause in violation of the collective bargaining agreement between the city and the FOP and of departmental policies. The grievance was handled in accordance with the grievance procedure set forth at Article 12, Section 5 of the parties' collective bargaining agreement and proceeded to arbitration. With respect to arbitration, the agreement provides:
 The arbitrator shall have no power to add to, subtract from or change any of the provisions of this Agreement. The decision rendered by the arbitrator shall be final and binding upon the Lodge, Management, the grievant and all employees covered by this Agreement.
Article 12, Section 6.
The arbitrator conducted a hearing on March 22 and 23, 1999. On June 24, 1999, she issued an award finding that McDonald had acted unprofessionally and had used poor judgment in confronting Martin about the alleged theft. However, she rejected the city's conclusion that McDonald had used unnecessary force on Martin because, technically speaking, the city's Use of Force Policy did not classify the use of pepper spray as a use of force. The arbitrator concluded, therefore, that McDonald's poor judgment in electing to use pepper spray did not establish a separate offense, although it was relevant to the question of whether he had acted professionally. The arbitrator found that McDonald's conduct had warranted disciplinary action, but that, based on the totality of the evidence presented, the penalty of discharge had been too severe. She stated:
 [I]t is found that the penalty of discharge cannot stand. Factors in aggravation are found to include: (1) a juvenile was involved; (2) [McDonald's] conduct constituted "Conduct Unbecoming"; (3) media coverage caused embarrassment and disrespect for the city and the program; (4) the African American community was very upset; (5) [McDonald's] conduct was a "serious" not a "non-serious" rule violation; and (6) he did not take Verbal Judo training [as had been recommended following a previous altercation with a neighbor].
 However, factors in mitigation outweigh those in aggravation. It is found that factors in mitigation include: (1) the evidence only established commission of one of the two offenses with which he was charged; (2) the purpose of discipline is to correct and to deter future misconduct, not to punish; (3) [McDonald] has 12 years seniority; (4) no unsatisfactory evaluation was introduced; (5) in 12 years he received only a reprimand for an off-duty incident of harsh language with a neighbor; (6) the misconduct consisted of a single act and not a series of deliberate, repeated acts; (7) the event is not likely to be repeated; (8) the Fitness for Duty Examination indicated [McDonald] would not be a poor risk if returned to duty; and (9) a discharge for "Conduct Unbecoming" and/or appropriate [sic] or unprofessional conduct, even with negative publicity and a juvenile involvement, was show[n] to be inconsistent with past practice.
Based on her assessment of these factors, the arbitrator concluded that McDonald's discharge should be reduced to a suspension and that he should be reinstated, without back pay, subject to certain conditions.
The city appealed the arbitrator's award to the court of common pleas pursuant to R.C. 2711.10(D) on the ground that the arbitrator had exceeded her powers in rendering her award. Each party filed a motion for summary judgment. The trial court granted the FOP's motion for summary judgment and denied the city's motion. It reasoned:
 The Agreement between the City and the FOP specifically provides that grievances concerning discharge shall be subject to the arbitration procedure and does not restrict the arbitrator's review. The arbitrator substantially correctly stated the facts presented and proceeded to detail the reasons for her decision after weighing numerous factors. * * *
 Since the arbitrator's decision draws its essence from the collective bargaining agreement and, therefore, the arbitrator did not exceed her authority, the inquiry must end. It is the arbitrator's interpretation of the contract, and not a reviewing court's, that governs the rights of the parties. (Citations omitted.)
The city advances two assignments of error on appeal, which we will consider together.
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT THE ARBITRATOR'S DECISION DERIVED ITS ESSENCE FROM THE COLLECTIVE BARGAINING AGREEMENT.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT THE ARBITRATOR DID NOT EXCEED HER AUTHORITY BY GRANTING THE GRIEVANCE AND REINSTATING MR. McDONALD TO THE CITY OF DAYTON POLICE FORCE.
The city contends that the arbitrator's decision did not draw its essence from the collective bargaining agreement and that the arbitrator exceeded her authority. The city advances several arguments in support of this position. We will discuss these arguments in turn following a brief discussion of the scope of our review in this type of case.
R.C. Chapter 4117 sets forth the rights and obligations of public employers, public employees, and public employee organizations insofar as they engage in collective bargaining. R.C. 4117.09(B) requires that such collective bargaining agreements provide for "a grievance procedure which may culminate with final and binding arbitration of unresolved grievances, and disputed interpretations of agreements, and which is valid and enforceable under its terms when entered into in accordance with this chapter." "If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure * * *." R.C. 4117.10(A). R.C. Chapter 4117 was intended to foster arbitration as an alternative avenue of dispute resolution by providing parties with a relatively speedy and inexpensive method of conflict resolution. Findlay City School Dist. Bd. of Edn. v. Findlay Edn.Assn. (1990), 49 Ohio St.3d 129, 131.
When parties agree to submit their disputes to binding arbitration, they agree to accept the result, regardless of its legal or factual accuracy. Goodyear v. Local Union No. 200
(1975), 42 Ohio St.2d 516, 522. An arbitrator's award will not be easily overturned or modified, and an appellate court may vacate such an award only if it exceeds the scope of the arbitrator's authority or does not rationally flow from the terms of the collective bargaining agreement. Cleveland v. FraternalOrder of Police, Lodge No. 8 (1991), 76 Ohio App.3d 755, 758-759;Huber Heights v. Fraternal Order of Police (1991), 73 Ohio App.3d 68,74. See, also, R.C. 2711.10. A court may not vacate an award pursuant to R.C. 2711.10 merely because it disagrees with a factual determination of the arbitrator. Ohio Office ofCollective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11,AFSCME, AFL-CIO (1992), 73 Ohio App.3d 392, 394. Moreover, an arbitrator has broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned in the labor agreement. Miami Twp. Bd. of Trustees v. Fraternal Order ofPolice, Ohio Labor Council, Inc. (1998), 81 Ohio St.3d 269, 273. If the arbitrator's award draws its essence from the collective bargaining agreement and is not arbitrary, capricious, or unlawful, a reviewing court may not substitute its judgment for that of the arbitrator. Id. at 274. Accordingly, the bases for a reversal of an arbitrator's decision on appeal are quite narrow.
Summary judgment is appropriate only if there is no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327; Civ.R. 56(C).
The city contends that the court of common pleas should have vacated the arbitrator's award because the arbitrator exceeded her powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made, in violation of R.C. 2711.10(D). Specifically, the city objects to the arbitrator's conclusion that the level of discipline imposed upon McDonald by the city was excessive under the circumstances.
The city asserts that the arbitrator's review of the city's disciplinary action against McDonald "should have been to determine (1) whether a cause for discipline exists and (2) whether the amount of discipline was proper under the circumstances." The city contends that the test set forth by the arbitrator, which required the city to show that McDonald had committed the charged offenses and that the penalty imposed was justified under the circumstances, unfairly modified that analysis. We see no distinction in these analyses.
The city also points out that the collective bargaining agreement provides that the city has the right "to terminate, demote, suspend or otherwise relieve employees from duty for just cause." Article 4(C). The city contends that, because "just cause" is not defined in the agreement, the arbitrator "stray[ed] into areas that were not contemplated by the parties in the collective bargaining agreement" by creating a rationale for her decision based on the weighing of aggravating and mitigating factors. We cannot countenance such a reading of the collective bargaining agreement because to do so would be to hold that the parties were precluded from arbitrating any grievance relative to whether an employee had been terminated, demoted, suspended, or otherwise relieved of duty for just cause by virtue of the fact that just cause is not defined in the agreement. In our view, this would be an absurd result. Moreover, the supreme court has expressly adopted the view that, where parties to a collective bargaining agreement have agreed to arbitrate disputes related to disciplinary action, the court will presume that the arbitrator has the authority to review both whether misconduct has occurredand whether the discipline taken in response to the misconduct was appropriate unless the contract language expressly prohibits the exercise of such power. Miami Twp., 81 Ohio St.3d at 272.
The city could have negotiated with the FOP for the insertion into the agreement of a more specific definition of just cause or a more limited review of its choice of disciplinary action, but it did not do so. In the absence of an express provision to the contrary, it was for the arbitrator to determine the meaning of "just cause" and to determine whether the punishment imposed for any infraction was reasonable. The arbitrator did not exceed her powers in doing so.
The city also contends that the arbitrator exceeded her powers in reviewing the specific disciplinary action taken by the city because, pursuant to the collective bargaining agreement, the city maintained the right to manage the operation of the police department, including the right to "develop, alter or abolish policies, practices, procedures, and rules to govern the operation of the Police Department and bring about discipline." Article 4(A). The city urges us to read this provision as limiting the authority of the arbitrator to review the type of disciplinary action taken by the city as a result of misconduct. We decline to do so. The city's actions in disciplining McDonald simply were not in the nature of developing, altering, or abolishing policies, practices, procedures or rules. We do not believe that such a strained interpretation of this language would effectuate the intention of the parties when the contract was entered, as we are required to do, as there is no apparent correlation between this provision and the grievance and arbitration procedures set forth elsewhere in the parties' agreement. See State ex rel. Kabert v. Shaker Hts.City School Dist. Bd. of Edn. (1997), 78 Ohio St.3d 37, 44.
In sum, it is our view that there was no genuine issue of material fact as to whether the arbitrator had acted within her authority in considering the evidence and in weighing the factors that bore on the severity of discipline appropriate for McDonald's conduct. Because there was no genuine issue of material fact as to whether the arbitrator exceeded the scope of her authority, the trial court did not err in granting the FOP's motion for summary judgment and in denying the city's motion.
The city also argues that any limitation on its ability to discharge police officers for misconduct is against public policy because it has the "right to expect the highest degree of respect and fairness from its police officers." Public policy, however, does not demand that the city have unbridled authority to terminate its employees for their misconduct. In its collective bargaining agreement with the FOP, the city bargained for the right to terminate or otherwise discipline police officers for just cause and to have an arbitrator review the propriety of its actions if other efforts to resolve disputes between the city and the FOP failed. There is nothing against public policy about enforcing this agreement.
The assignments of error are overruled.
The judgment of the trial court will be affirmed.
 _________________________ WOLFF, J.
BROGAN, J. and FAIN, J., concur.