KEATON, Appellee,

v.

PURCHASE PLUS BUYERS GROUP, INC., Appellant.

[Cite as *Keaton v. Purchase Plus Buyers Group, Inc.* (2001), 145 Ohio App.3d 796.]

Court of Appeals of Ohio,
Fourth District, Pike County.

No. 01CA657.

Decided Aug. 31, 2001.

*Catanzaro & Rosenberger* and *Michele R. Rout,* for appellee.

*Murray, Murphy, Moul & Basil, L.L.P.,* and *Geoffrey J. Moul,* for appellant.

PETER B. ABELE, Presiding Judge.

This is an appeal from a Pike County Common Pleas Court judgment that denied a Civ.R. 60(B) motion for relief from judgment filed by Purchase Plus Buyers Group, Inc., defendant below and appellant herein. The following errors are assigned for our review:

FIRST ASSIGNMENT OF ERROR:

"The trial court abused its discretion in not holding an evidentiary hearing on Purchase Plus Buyers Group's motion to set aside the default judgment."

SECOND ASSIGNMENT OF ERROR:

"The trial court abused its discretion in not setting aside the entire default judgment entered against purchase plus and compelling Keaton to arbitrate."

THIRD ASSIGNMENT OF ERROR:

"The trial court abused its discretion in not holding a hearing on the motion to set aside."

FOURTH ASSIGNMENT OF ERROR:

"The trial court abused its discretion in not setting aside the default judgment as to damages."

FIFTH ASSIGNMENT OF ERROR:

"The trial court abused its discretion by not holding a hearing on damages."[1]

Our review of the record reveals the following facts pertinent to this appeal. On July 28, 2000, Howard Keaton, plaintiff below and appellee herein, filed suit against appellant alleging that he had been "recruited" as an "independent contractor, sales associate" to conduct business for the company in Pike County. Appellee further alleged that he was promised a "%100 [*sic*] Money Back Guarantee" if he was not satisfied in his business with appellant and that he would be returned, within ninety days of investment, any money he "expended for the original wholesale purchase." Appellee claimed that based upon his reliance on these assurances, he purchased over "250 purchasing centers" at a cost of more than $100,000. Appellee apparently became disillusioned with the company and sought return of his money. Apparently, appellee's effort was unsuccessful. Subsequently, appellee pled claims for fraud, misrepresentation, and breach of warranty and sought, *inter alia,* $81,000 in compensatory damages.[2]

Certified mail service was ostensibly made on appellant's statutory agent, but no answer was ever filed. On September 7, 2000, appellee moved for default judgment. The trial court granted the motion and, on September 22, 2000, entered judgment in appellee's favor against appellant for $81,000 plus interest and costs. Appellee thereafter caused a certificate of judgment (lien) to be issued and initiated proceedings to hold a judgment debtor examination.

On October 31, 2000, appellant filed a motion "to set aside default judgment, to stay execution of judgment and to compel arbitration." Appellant argued that its statutory agent had resigned three days after the original complaint was filed and that it was "not at all clear" who signed for service of the summons and complaint. In any event, appellant continued, the company's "practice" was for all new legal matters to be forwarded to Ted Lindauer, chairman of the company's board of directors. Lindauer allegedly visited the company's Westerville, Ohio office in August 2000 to review "all the open legal files" but found

---

1. These assignments of error are taken from the "statement of assignment of error presented" as set forth on page v of appellant's brief. We note that in its table of contents, appellant includes another "statement of assignment of error presented" but, this time, sets out only four assignments of error rather than the five set out later in its brief.

2. It is not entirely clear from the complaint (which is not exactly a model of clarity to begin with) why appellee sought only $81,000 rather than the $100,000, which he allegedly spent to acquire the "purchasing centers."

nothing related to this case. An affidavit to that effect from Lindauer was submitted in support of the motion.

Appellant also asserted that if the court granted relief from judgment, appellee was obligated, under the "independent sales associate contract" that he had signed, to submit "any claim, dispute or other differences" with the company to "binding arbitration." Appellant incorporated a copy of this contract into an affidavit from Jim Williamson, a Vice President of Corporate Development with the company.

Finally, appellant argued that the underlying claims in this case would fail on their merits if the matter was reopened. Williamson's affidavit incorporated an account statement showing that appellee had been paid more than $35,000 in bonuses and commissions during his association with the company and that he retained "additional product" that he had not sold or returned in an amount exceeding $38,000. Thus, appellant claimed that it did "not owe Howard Keaton $80,000."

Appellee's memorandum in opposition asserted that the complaint had been duly served on the company's corporate agent. Further, although he submitted no evidence in support of this point, appellee asserted that no new statutory agent had ever been appointed to replace the one who allegedly resigned. This scenario, appellee maintained, was simply a "tactic" employed by appellant "to avoid being served with any complaints." As to appellant's alleged defenses if the default judgment was vacated, appellee argued that the arbitration clause was adhesionary and unconscionable and, thus, unenforceable. Appellee further argued that his claims did have merit and, in support thereof, attached a copy of a complaint in an ongoing action by the Ohio Attorney General against appellant, alleging various and sundry violations of the Ohio Consumer Sales Practices Act.

On December 8, 2000, the trial court issued its judgment and overruled appellant's Civ.R. 60(B) motion. This appeal followed.

I

Before we review this case on its merits, we first pause to address some problems with appellant's brief. The provisions of App.R. 16(A) require a separate argument for each assignment of error. Pursuant to App.R. 12(A)(2), an appellate court may disregard any assignment of error for which a separate argument has not been made. See *Portsmouth v. Internatl. Assn. of Fire Fighters, Local 512* (2000), 139 Ohio App.3d 621, 626, 744 N.E.2d 1263, 1266; *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 186, 619 N.E.2d 469, 474; *State v.*

*Caldwell* (1992), 79 Ohio App.3d 667, 677, 607 N.E.2d 1096, 1103, at fn. 3.[3]

█ In the instant case, the argument portion of appellant's brief is divided into four parts. However, only the third and fourth parts appear to directly address any of the assignments of error. Moreover, we find no discernible difference between appellant's first and third assignments of error. All of these factors combine to make the brief much more confusing and difficult to follow than it otherwise should have been. Nevertheless, in the interests of justice we shall endeavor to address the arguments therein to the best of our ability.

## II

█ We jointly consider the first, second, and third assignments of error, which all address the trial court's decision to deny appellant relief from the default judgment. Our analysis begins with the proposition that, in order to prevail on a Civ.R. 60(B) motion, a movant must establish (1) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); (2) the existence of a meritorious claim or defense to present if relief is granted; and (3) that the motion is made within a reasonable time which, for those grounds set forth in Civ.R. 60(B)(1), (2), and (3), means not more than one year after judgment. See *State ex rel. Richard v. Seidner* (1996), 76 Ohio St.3d 149, 151, 666 N.E.2d 1134, 1136; *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351, 6 OBR 403, 405–406, 453 N.E.2d 648, 651; *GTE Automatic Elec., Inc. v. ARC Indus., Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, at paragraph two of the syllabus. A failure to establish any one of these criteria will cause the motion to be overruled. See *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 174, 637 N.E.2d 914, 915; *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, 566. With this in mind, we turn our attention to the proceedings below.

█ Our review reveals no question that appellant satisfied the second and third criteria for relief from judgment. The company filed its motion approximately one month after the trial court issued the default judgment. Further, the motion set out several meritorious defenses to present if relief is granted. The pivotal issue in this case is whether appellant established entitlement to relief under one of the grounds listed in Civ.R. 60(B)(1) through (5).

In its motion, appellant argued in essence that relief was warranted on the grounds of "excusable neglect." See Civ.R. 60(B)(1). The company attached two affidavits in support of that claim. Both affiants attested that the company had

---

3. The argument portion of the brief should also be organized in accordance with the assignments of error in the brief. See Whiteside, Ohio Appellate Practice (1999 Ed.) 94, Section T 5.17. A failure to do so leads to confusion that may result in the court of appeals' disregarding all assignments of error not clearly and expressly argued in the brief. *Id.* at 95.

"no record" of ever receiving the complaint. Although the company did not dispute that somebody signed a certified mail receipt for service of process, the affiants stated that the signer of that receipt could not be identified. Lindauer also attested that he visited the company's Westerville offices and "took possession of all the open legal files." The affiant continued that "[n]othing related to the Keaton suit was included in those files." Finally, Lindauer explained that when the application for judgment debtor exam was received in the mail, the company began investigating the matter and retained legal counsel, who filed the motion for relief from judgment below.

There is no bright-line test for determining whether a party's neglect is excusable or inexcusable. *D.G.M., Inc. v. Cremeans Concrete & Supply Co.* (1996), 111 Ohio App.3d 134, 138, 675 N.E.2d 1263, 1265; *Hopkins v. Quality Chevrolet, Inc.* (1992), 79 Ohio App.3d 578, 582, 607 N.E.2d 914, 916–917. This finding depends on the particular facts and circumstances involved in each individual case. *Woodson v. Carlson* (May 9, 2001), Summit App. No. 20296, unreported, 2001 WL 490010; *Mallik v. Jeff Wyler Fairfield, Inc.* (Nov. 13, 2000), Butler App. No. CA2000–06–106, unreported, 2000 WL 1693246; *Gillam v. Johnson* (Oct. 20, 2000), Montgomery App. No. 18379, unreported, 2000 WL 1546600.

In *Kay v. Marc Glassman, Inc.* (1996), 76 Ohio St.3d 18, 665 N.E.2d 1102, the Ohio Supreme Court addressed a situation similar to that in the case at bar. In *Kay,* the plaintiff served a complaint on a corporation's attorney and statutory agent. The attorney prepared an answer and returned the answer to his secretary along with the case file for mailing to the court and opposing counsel. However, the secretary (in addition to her secretarial duties) was sorting out the law firm's bookkeeping system after the retirement of the firm's previous bookkeeper and mistakenly returned the case file (including the answer) to the file drawer rather than mailing it to the court and opposing counsel. Subsequently, the plaintiff took a default judgment. A week later, while reviewing files with a clerk, the attorney discovered that the answer had not been filed and that a default judgment had been entered against his client. Counsel filed a motion for relief from judgment the next day. In support of that motion, he attached his affidavit and affidavits from his clerk and his secretary that detailed the events which led to the failure to file the answer. The trial court denied the motion without hearing and the court of appeals affirmed that judgment.

The Ohio Supreme Court reviewed the matter and reversed the judgment. The court concluded that the trial court erred in overruling the motion without at least conducting an evidentiary hearing. The court held that a hearing should be held "where grounds for relief are sufficiently alleged and are supported with evidence which would warrant relief from judgment." *Id.* at 19, 665 N.E.2d at

1104. Interestingly, the court further held that "grounds for relief from judgment appeared on the face of the record" in that particular case and that relief from judgment should have been granted to the movant as a matter of law (apparently irrespective of any hearing on the matter). *Id.* at 20, 665 N.E.2d at 1104–1105.

We note that the *Kay* case is problematic for several reasons. First, it is internally inconsistent. We see no reason to conduct a hearing if, as the Ohio Supreme Court determined, a decision can be made as a matter of law that Civ.R. 60(B) relief is warranted simply by looking at the evidentiary materials in support of the motion. Second, as noted in the dissent, apparently nothing in the affidavits submitted in support of the motion explains how the neglect was legally excusable. *Id.* at 21, 665 N.E.2d at 1105 (Moyer, C.J., and Cook, J., dissenting). Be that as it may, we fully recognize that the court's majority opinion states the law of that case and we are duty-bound to apply that law herein to the best of our understanding and ability.

The affidavits appellant submitted in the cause *sub judice* are similar to the materials submitted in *Kay.* Specifically, the affidavits point to temporary office disorganization due to the departure of personnel.[4] The affidavits also explain that the company did not file an answer because it had no record of the lawsuit and did not receive notice of the action until the application for judgment debtor exam. At this juncture, appellant began an investigation and promptly hired legal counsel.

We note, however, that various dissimilarities exist between these cases. First, in *Kay,* the affidavits were submitted by all individuals involved with the inadvertent failure to file the answer (*i.e.,* the attorney and the secretary). That is not the case here. The record in the case at bar contains a certified mail receipt that is ostensibly signed by the statutory agent. Messrs. Lindauer and Williamson both attest that they had no idea who signed the receipt and that the company had no record of the lawsuit. Noticeably absent, however, was any affidavit or other input from the former statutory agent (Richard Waak) stating whether he signed for the complaint and, if so, what happened to the file.

The testimony of appellant's former statutory agent could well be a critical factor. If the agent signed for the complaint, but purposely refused to act on the matter, this may not constitute excusable neglect. If the statutory agent did not receive service of the complaint, however, and the complaint was mistakenly delivered, this may excuse the company's failure to file an answer. We believe that too many variables are present to say, one way or the other, whether the

---

4. In *Kay,* the firm's bookkeeper apparently left the firm. In the instant case, the company's statutory agent apparently resigned three days after the lawsuit was filed.

default judgment resulted from excusable neglect without considering additional evidence (*e.g.*, having some evidentiary material from the agent who purportedly signed the certified mail receipt).

Another factor to consider is appellee's contention that the company was employing tactics "to avoid being served with any complaints." Even in *Kay*, the Supreme Court reiterated that "a complete disregard for the judicial system" does not constitute excusable neglect. *Id.* at 20, 665 N.E.2d at 1105; see, also, *D.G.M., Inc., supra*, at 140, 675 N.E.2d at 1267; *Vanest v. Pillsbury Co.* (1997), 124 Ohio App.3d 525, 536, 706 N.E.2d 825, 832. Appellee submitted no evidence in support of this contention and, accordingly, denial of relief from judgment should not be based thereon. This further illustrates, however, the need for factual inquiry into the various allegations that have been made in this case.

In the end, having carefully weighed the particular facts and circumstances of this case, we are not persuaded that "grounds for relief from judgment appear on the face of the record" such that the trial court should have granted appellant relief from judgment as a matter of law. See *Kay, supra*, at 20, 665 N.E.2d at 1104. The certified mail receipt indicates that service of the summons and the complaint was made on the company's statutory agent. We find nothing in the record to directly refute that point. Further, we find no affidavit from the former statutory agent to indicate whether he signed for service and, if so, what happened to the complaint after its receipt.

 However, in light of *Kay*, we believe that the interests of justice are best served by remanding this case for a hearing on the issue of "excusable neglect." The Ohio Supreme Court has mandated that such a hearing should be held when grounds for relief are "sufficiently alleged" and are supported with evidence that would warrant relief from judgment. *Id.* at 19, 665 N.E.2d at 1104. We recognize that the instant case presents an exceedingly close question. Nevertheless, given the court's mandate in *Kay*, and considering that Civ.R. 60(B) is a remedial rule to be construed liberally, *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 249, 18 O.O.3d 442, 445–446, 416 N.E.2d 605, 610; *Doddridge v. Fitzpatrick* (1978), 53 Ohio St.2d 9, 12, 7 O.O.3d 5, 6–7, 371 N.E.2d 214, 217, and that cases should be decided on their merits whenever possible, *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 257–258, 454 N.E.2d 951, 952–953; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269–270, 297 N.E.2d 113, 122, we choose to err on the side of caution and remand this case for an evidentiary hearing on the allegations set forth in appellant's motion for relief from judgment.

 We preface our decision, though, with several caveats. First, we acknowledge that a motion for relief from judgment is committed to the sound

discretion of the trial court and the court's ruling should not be disturbed absent a showing of an abuse of that discretion. See *State ex rel. Russo v. Deters* (1997), 80 Ohio St.3d 152, 153, 684 N.E.2d 1237, 1238; *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122, 1123–1124; *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St.3d 64, 66, 18 OBR 96, 98–99, 479 N.E.2d 879, 882. An abuse of discretion is described as being more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140, 1142; *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242, 1249; *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486, 488. In applying the abuse-of-discretion standard, appellate courts are admonished that they are not to substitute their judgment for that of the trial court. See *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254, 1258; *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181, 1184; *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308. Indeed, in order to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but passion or bias. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3. In the case *sub judice*, but for the Supreme Court's decision in *Kay, supra*, it is doubtful that we would have found an abuse of discretion. Thus, our ruling should not be viewed as criticism of the trial court's decision.[5]

We also hasten to add that our decision should not necessarily be construed as a comment on the merits of the case. The sole purpose of the evidentiary hearing is to take evidence and either verify or discredit the asserted facts. See *Gaines & Stern Co., L.P.A. v. Schwarzwald, Robiner, Wolf & Rock Co., L.P.A.*

---

**5.** We parenthetically note that the *Kay* decision has spawned considerable disagreement among the various courts of appeals in this state. See, *e.g., Woodson v. Carlson* (May 9, 2001), Summit App. No. 20296, unreported, 2001 WL 490010; *Dooley v. Lorain* (Oct. 25, 2000), Lorain App. No. 99CA007487, unreported, 2000 WL 1587013; *Smith v. Lima Mem. Hosp.* (May 27, 1999), Allen App. No. 1–98–73, unreported, 1999 WL 378364; *Lexis–Nexis v. Robert Binns Assoc., Inc.* (Dec. 1, 1998), Franklin App. No. 98AP–228, unreported, 1999 WL 41064; *Donovan v. Middleton* (Feb. 17, 1998), Stark App. No. 1997CA00186, unreported, 1998 WL 172854. Moreover, a review of case law applying *Kay* indicates that courts have struggled to distinguish the case. See, *e.g., Perry v. Gen. Motors Corp.* (1996), 113 Ohio App.3d 318, 324, 680 N.E.2d 1069, 1073; *Syphard v. Vrable* (2001), 141 Ohio App.3d 460, 751 N.E.2d 564; *Lotto Sport, USA v. Soccerland Partnership* (Nov. 21, 1997), Lucas App. No. L–97–1186, unreported, 1997 WL 728648. See, *e.g., Vanest v. Pillsbury Co.* (1997), 124 Ohio App.3d 525, 537–538, 706 N.E.2d 825, 833; *Mitchell v. Mill Creek Sparkle Mkt.* (Jun. 29, 1999), Mahoning App. No. 97CA230, unreported, 1999 WL 476039; *First Inv. Co. v. City Loan Co.* (July 31, 1996), Lorain App. No. 96CA006325, unreported, 1996 WL 425899. We believe that further clarification by the Ohio Supreme Court is warranted.

(1990), 70 Ohio App.3d 643, 646, 591 N.E.2d 866, 868; *U.A.P. Columbus JV326132 v. Plum* (1986), 27 Ohio App.3d 293, 294–295, 27 OBR 338, 338–339, 500 N.E.2d 924, 925–927. Just as courts should be mindful of carefully scrutinizing the veracity of the proverbial "blame-the-secretary" excuse, *Woodson, supra* (Carr, J., dissenting), courts should be equally circumspect when considering other asserted justifications. If the trial court determines that appellant's witnesses are not credible, or should the court find that appellant avoided service of process (as appellee suggests) and thus demonstrated a complete disregard for the legal system, the decision to deny the company relief from judgment may be reinstated.

In any event, based upon the reasons outlined above, we overrule appellant's second assignment of error and sustain appellant's first and third assignments of error. This renders the two remaining assignments of error moot. See App.R. 12(A)(1)(c).

Accordingly, we reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HARSHA and EVANS, JJ., concur.